(C. D. 1447)

CASTELLO FENCING EQUIPMENT CO., INC. ROHNER, GEHRIG & CO., INC. } v. UNITED STATES

## United States Customs Court, Second Division

(Decided July 16, 1952)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs. *Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:  Certain foil blades imported from Italy were classified by the collector of customs as "sword blades" and duty was imposed thereon at the rate of 50 per centum ad valorem pursuant to the provisions of paragraph 363 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 363).

Plaintiffs claim that the articles come within the catch-all provisions of paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and accordingly are dutiable at the rate of 22½ per centum ad valorem.

### THE STATUTES

Paragraph 363, *supra*, reads as follows:

Sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal, 50 per centum ad valorem.

Paragraph 397, as modified, *supra*, so far as pertinent here, reads:

Articles or wares not specially provided for, whether partly or wholly manufactured:

*     *     *     *     *     *     *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

*     *     *     *     *     *     *

Other (except slide fasteners and parts thereof)_____ 22½% ad val.

A sample of the merchandise was received in evidence as exhibit 1 and it was stipulated that it is composed wholly or in chief value of steel and is not plated with platinum, gold, or silver, or colored with gold lacquer.

Two witnesses only were called at the trial, both of whom testified on behalf of the plaintiffs.

Hugo Castello testified that he is manager of the Castello Fencing Equipment Co., Inc., importer of fencing equipment, and that he is also fencing coach at New York University; that he had engaged in the sport for about 20 years, and while in college won the intercol-

legiate championship several times. He identified exhibit 1 as a fencing foil blade, and stated that in its condition as imported it is not ready for that use. To adapt it for use, the "short end" of the foil has to be ground down and threaded and the roughness filed so that it will fit snugly against the guard. After it is threaded and the handle guard, pommel, and the thumb padder put on, it is a fencing foil, and when equipped with a fencing handle, is used in the sport of fencing.

Castello also testified to his familiarity with swords and stated that he owned a collection of them, and that exhibit 1 did not simulate a sword blade, being of different shape, very flexible, and without a sharp edge. "A sword blade," he stated "is flat and has cutting edges on both sides," whereas exhibit 1 does not have any cutting edges, and while a sword is used in combat, exhibit 1 is used for exercise.

Jose R. DeCapriles, an attorney, testified to an experience of 21 years in fencing; had been national champion several times and on three Olympic teams, and for 7 years editor of the National Fencing Magazine which is no longer published. In addition to his familiarity with the use of foils, he had for the last 8 years collected swords. In his opinion, exhibit 1 is not a sword blade because it is too light, too narrow, too flexible, is rectangular in shape, has no sharp edges and no sharp points; whereas a sword is flatter, has a wider blade, certain rigidity, a sharp edge and point—characteristics which are not found in exhibit 1.

In support of the collector's classification, defendant invites consideration of legislative history stating that—"The provision of paragraph 363, *supra*, for 'Sword blades' is of doubtful meaning. Hence, it is proper to consult legislative history in order that the true legislative intent may be arrived at."

Later in its brief, however, defendant argues that—"Although the common meaning of the term 'Sword blades, and swords' is not subject to doubt, it is urged that the Congress in using these words did not mean to limit them to their common meaning."

The foregoing contentions are seemingly contradictory and we deem neither of them tenable for reasons that will appear *infra*.

At the outset we see no reason for regarding the term "Sword blades, and swords" as ambiguous, and we quite agree with defendant that the common meaning of those words is not doubtful.

As aids to the understanding and enlightenment of the court as to the common meaning of the term "sword," the following dictionary definitions are quoted in plaintiffs' brief:

Webster's New International Dictionary, 2d Edition:

**1.a** A weapon having a long and usually sharp-pointed blade with a cutting edge or edges;—the general term, including the small sword, rapier, saber, scimitar, etc. **b** Such a weapon worn (sometimes displayed) as an item of ceremonial attire, as one of the side arms, as a symbol of one's office or state, etc.

Funk & Wagnalls New Standard Dictionary:

**1.** A weapon consisting of a long blade fixed in a hilt; for cutting or thrusting, and worn when not in action in a scabbard belted to or hung at the side; loosely, any side-arm for cutting or thrusting, as a rapier, simitar, or claymore. * * * **3.** Anything shaped or used like a sword; as, a scutching-sword.

In the light of these definitions and as a matter of common experience, it would seem obvious that the foils represented by exhibit 1 are not swords or sword blades within the common acceptation and meaning of those words and, there being no contention in this case that the common and commercial meanings are different, they are presumed to be the same.

However, defendant urges us to resort to extraneous circumstances in an effort to arrive at the congressional or legislative intent as to the scope and meaning of the words "Swords and sword blades" in said paragraph 363. In this connection, our attention is invited to the Summary of Tariff Information, 1921, wherein the following appears at page 483:

SWORDS AND SWORD BLADES.

(See Survey C-13).

*Description and uses.*—The term swords, sword blades, and side arms includes bayonets, daggers, foils and foil blades for fencing, * * *.

The same statement appears in the Summary of Tariff Information, 1929, Vol. 1, page 778.

While giving proper respect to the statement above quoted, we are not prepared upon the record in this case to yield our judgment to the unsupported statements appearing in the summaries of tariff information, *supra*.

Reference is made by plaintiffs to the case of *United States* v. *Hori Bros.*, 19 C. C. P. A. (Customs) 108, T. D. 45244, wherein certain Japanese swords made of metal and used by children in play were held to be dutiable as "Swords * * * irrespective of quality or use, * * *" as provided in paragraph 363 of the Tariff Act of 1922 (which is identical with paragraph 363 of the Tariff Act of 1930). It was there held that because of the words "irrespective of quality or use," it was immaterial how the importation was used. That case, however, lends little aid to the determination of the problem confronting us here.

Bearing in mind the pronounced differences in character, construction, and use of foils and sword blades, as disclosed by this record, we are satisfied that by no reasonable stretch of law or fact can the foils represented by exhibit 1 be regarded as sword blades or swords, and they are not subject to classification as such.

There being no other specific provision for foils, we find and hold that they are dutiable as articles or wares in chief value of metal as

provided in paragraph 397, as modified,' *supra*. That claim in the protest is sustained.

Judgment will issue accordingly.